# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 04-20250-CR-JORDAN/KLEIN(s)(s)
**18 U.S.C. § 371**
**18 U.S.C. § 1341**
**18 U.S.C. § 1343**
**18 U.S.C. § 1956(a)(1)(A)(i)**
**18 U.S.C. § 1956(h)**
**15 U.S.C. § 78j(b)**
**15 U.S.C. § 78ff(a)**
**17 C.F.R. § 240.10b-5**
**18 U.S.C. § 2**

**UNITED STATES OF AMERICA,**

**v.**

**RICHARD A. ANDERS,**
    **a/k/a "Rick," and**
**NICHOLAS BACHYNSKY,**
    **a/k/a "Doc,"**
    **a/k/a "Nick,"**

                **Defendants.**
_____/

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Superseding Indictment:

1.     Helvetia Pharmaceuticals, Inc. ("Helvetia") was a Delaware corporation that on or about February 27, 2001, was authorized to conduct business as a foreign corporation in the State of Florida. Helvetia's principal place of business was located in the Southern District of Florida, initially at 3200 University Drive, Suite 210, Coral Springs, Florida 33065, and subsequently at 3300

University Drive, Suite 408, Coral Springs, Florida 33065. Helvetia maintained bank accounts at Bank of America, N.A. and First Union National Bank ("First Union Bank"), which subsequently became Wachovia Bank.

2.     Helvetia was purportedly engaged in the business of treating individuals suffering from cancer with a purported "new" and "unique" cancer treatment involving "intracellular hyperthermia" therapy. The company described its cancer treatment as "successful" and explained that it involved the use of a "proprietary 'agent,'" which internally heats malignant tumor cells "to the point they can no longer survive." To purportedly raise capital for this business, the defendants offered and sold securities issued by Helvetia to the general public in the form of stock and notes.

<u>Defendants</u>

3.     Defendant **RICHARD A. ANDERS** represented himself as Helvetia's President of Investor Relations and was a principal of the company. Among other things, **RICHARD A. ANDERS** managed and supervised Helvetia's day-to-day domestic sales operations, solicited investors to purchase Helvetia's securities, and accepted and controlled investors' funds. **RICHARD A. ANDERS** exercised control over Jufari Management Ltd. ("Jufari"), a foreign limited partnership, and Lonsdale Consultants Corp. ("Lonsdale"). Jufari and Lonsdale both maintained bank accounts at First Union Bank, where some investors' monies were deposited purportedly on behalf of Helvetia.

4.     Defendant **NICHOLAS BACHYNSKY** represented himself as Helvetia's Medical Director and was a principal of Helvetia. Among other things, **NICHOLAS BACHYNSKY** solicited investors to purchase Helvetia's securities and "treated" Helvetia patients.

<u>Others</u>

5.      Laurence M. Dean was Helvetia's Chief Financial Officer, Secretary, Treasurer, and

a Director of the company. Laurence M. Dean also represented himself as the President of Jufari.

Among other things, Laurence M. Dean communicated with Helvetia investors, accepted investors'

monies, and had signatory authority over bank accounts in the names of Helvetia, Jufari, and

Lonsdale.

6.      Arthur Scheinert represented himself as Helvetia's Senior Vice-President of

Marketing and was a Helvetia sales representative. Among other things, Arthur Scheinert solicited

investors to purchase Helvetia's securities.

**<u>COUNT 1</u>**
**Conspiracy**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 6 of the General Allegations section of this Superseding

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around late 2000, through in or around October 2002, in the Southern

District of Florida, and elsewhere, the defendants,

**RICHARD A. ANDERS,**
**a/k/a "Rick," and**
**NICHOLAS BACHYNSKY,**
**a/k/a "Doc,"**
**a/k/a "Nick,"**

did willfully, that is, with the specific intent to further the unlawful purpose, and knowingly

combine, conspire, confederate and agree with each other and with Laurence M. Dean, Arthur

Scheinert, and others known and unknown to the Grand Jury, to commit certain offenses against the

United States, that is:

-3-

(a) to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and causing to be delivered certain mail matter by the United States Postal Service and any private or commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341;

(b) to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343;

(c) to willfully, knowingly, and unlawfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, that is, stock and notes issued by Helvetia, and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

-4-

## PURPOSE OF THE CONSPIRACY

3.     A purpose of the conspiracy was for the defendants to unjustly enrich themselves by misappropriating monies from investors for their personal use and benefit by making materially false representations and concealing and omitting to state material facts concerning, among other things, the use of investors' funds, Helvetia's ownership rights to a purported cancer treatment, investors' expected returns, the results of medical studies, the criminal and disciplinary histories of **RICHARD A. ANDERS** and **NICHOLAS BACHYNSKY,** and the health risks associated with Helvetia's purported cancer treatment.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.     The defendants and their accomplices, directly and indirectly, offered and sold stock and notes issued by Helvetia to the general public, raising more than $5,000,000 from more than 50 investors nationwide, resulting in investor losses.

5.     To perpetrate the scheme, the defendants and their accomplices solicited investors by, among others things, making telephone cold calls, meeting them in person, and obtaining referrals from investors. During investor solicitations, the defendants and their accomplices represented, and caused others to represent, to investors that Helvetia was raising investor monies to operate a European clinic offering a novel, proprietary cancer therapy to treat individuals afflicted with various types of cancer.

6.     The defendants and their accomplices, directly and indirectly, led investors to believe that they had the opportunity to invest on the ground floor of Helvetia, offering investors the

opportunity to purchase Helvetia's stock for $1.00 per share. The defendants and their accomplices falsely represented, and caused others to falsely represent, to investors that Helvetia's stock price would dramatically increase in value after Helvetia went public.

7.      The defendants and their accomplices falsely made, and caused others to falsely make, varying representations to investors that they would earn profits on their investments of between 200% to 600%.

8.      Similarly, the defendants and their accomplices, directly and indirectly, offered notes to investors, which promised to pay the investors fixed annual rates of return on their investments and were convertible into shares of Helvetia's stock. Depending on the investor and the terms of the note, the defendants and their accomplices, directly and indirectly, promised annual rates of return that ranged from 8% to 12%.

9.      To perpetrate the scheme, the defendants and their accomplices, directly and indirectly, disseminated, and caused others to disseminate, written sales materials and documents to investors to solicit their funds. Investors received Helvetia's sales materials and documents by a commercial overnight carrier service, the United States Postal Service, and directly from the defendants and their accomplices. Helvetia's materials included, among other things, a purported subscription agreement, investment letter, business plan, and Helvetia's bank account wire instructions.

10.     Helvetia sales materials explained to investors that, among other things, the company's "primary business" was "the treatment of cancer, in a clinic setting, utilizing a new, unique intracellular hyperthermia therapy methodology," and that the "primary goal" of the company was "to open and manage a full service Intracellular Hyperthermia (IHT) Clinic for the . . . treatment

-6-

of cancer." To induce investors to invest their monies in this purported business, Helvetia sales materials represented to investors, among other things, that "the Company intends to use the proceeds from the sale of the Securities for working capital and general corporate purposes."

11.     Helvetia materials also described intracellular hyperthermia therapy to investors as a cancer treatment involving a "proprietary 'agent,'" which when administered to cancer patients, internally heats their malignant tumor cells "to the point they can no longer survive" while, at the same time, sparing normal tissue and having no toxic effects. Helvetia materials further represented to investors that a "Mayo Clinic trained physician, with a Ph.D. in chemistry, has developed a . . . method to induce safe, practical intracellular hyperthermia," and that Helvetia had "acquired exclusive rights to [this] novel, proprietary therapy for [the] successful treatment of a variety of heretofore-untreatable malignancies (cancer)."

12.     In order to invest in Helvetia, the defendants and their accomplices, directly and indirectly, required investors to sign Helvetia's subscription agreement and immediately return the agreement with their monies via an overnight commercial carrier service. The defendants and their accomplices, directly and indirectly, accepted investors' monies by either check or wire transfer and caused them to be deposited into bank accounts in the names of Helvetia, Jufari, and Lonsdale.

13.     After accepting investors' monies, the defendants and their accomplices, directly and indirectly, mailed investors either Helvetia stock certificates or promissory notes reflecting their investment. Individuals who chose to invest with Helvetia were passive investors, did not retain the ability to control the profitability of their investment, and expected their investments to generate returns exclusively through the efforts of the defendants.

-7-

14.     To induce investors to invest money with Helvetia, the defendants and their accomplices provided, and caused others to provide, sales materials and other documents to investors containing numerous false statements and concealments and omissions of material facts and the defendants made, and caused others to make, numerous materially false statements to investors, and the defendants concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among others, the following:

## **Materially False Statements**

a.     That investors' funds would be used for the operation of Helvetia's European cancer treatment clinic, working capital, and general corporate purposes when, in truth and in fact, the defendants used investors' funds for other purposes, including for their own personal use and benefit;

b.     That Helvetia had "acquired exclusive rights" to a purportedly novel, proprietary therapy for the successful treatment of a variety of cancers, when, in truth and in fact, there was substantial uncertainty as to whether Helvetia owned any rights to such purported therapy;

c.     That investors would make returns on their monies ranging variously from 200% to 600% when, in truth and in fact, the defendants had no reasonable basis to support these representations;

d.     That university studies had shown that Helvetia's methodology for inducing intracellular hyperthermia was "extremely effective" in the treatment of variety of cancers and acquired immune deficiency syndrome ("AIDS") cells. More specifically, that the results of laboratory studies relating to intracellular hyperthermia therapy performed under the direction of a

professor at Syracuse University demonstrated minimal effects on human cells not infected with AIDS, when, in truth and in fact, no such results were achieved;

### Concealment and Omission of Material Facts

e.     That the defendants were misappropriating investor funds for their own personal use and benefit;

f.     That Helvetia's purported cancer treatment involved administering patients with a chemical named 2,4 – Dinitrophenol ("DNP"), which is not approved for human consumption in the United States, poses serious health risks, and may cause death. Further, that DNP is used in pesticides, wood preservatives, and the manufacturing of dyes;

g.     That **RICHARD A. ANDERS** and **NICHOLAS BACHYNSKY** were principals of Helvetia;

h.     That on or about March 1, 1995, **RICHARD A. ANDERS** was criminally convicted in the case of *United States v. Richard A. Anders*, Case No. 1:93-CR-506-5-GET (N.D. Ga. November 22, 1993), for having: conspired to commit securities fraud, in violation of Title 18, United States Code, Section 371; committed securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5; committed wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2; and engaged in interstate transportation of monies taken by fraud, in violation of Title 18, United States Code, Section 2314;

i.     That on or about December 6, 1995, **RICHARD A. ANDERS** was permanently barred by the U.S. Securities and Exchange Commission in the case of *In the Matter of Richard A. Anders*, Securities Exchange Act Rel. No. 34-36553 (December 6, 1995), "from

-9-

association with any broker, dealer, municipal securities dealer, investment adviser or investment company, effective immediately" and "from participating in an offering of penny stock;"

j.      That on or about December 15, 1995, **RICHARD A. ANDERS** was enjoined by a United States District Court in the case of *Securities and Exchange Commission v. Word, et al.*, Case No. 1:95-CV-2470-GET (N.D. Ga. September 28, 1995), from committing further violations of the anti-fraud provisions of the federal securities laws;

k.      That on or about July 13, 1989, **NICHOLAS BACHYNSKY** was criminally convicted in the case of *United States v. Nicholas Bachynsky*, Case No. H-88-00364-01 (S.D. Tx. October 28, 1988) for having committed racketeering activity, in violation of Title 18, United States Code, Section 1962(c), and having conspired to defraud the Internal Revenue Service, in violation of Title 18, United States Code, Section 371;

l.      That on or about January 26, 1990, the Texas State Board of Medical Examiners revoked **NICHOLAS BACHYNSKY's** medical license in the State of Texas in the case of *In the Matter of the Complaint Against Nicholas Bachynsky, M.D.*;

m.      That on or about April 30, 1991, the Commissioner of Education of the State of New York issued an order to revoke **NICHOLAS BACHYNSKY's** medical license in the State of New York in the case of *In the Matter of Nicholas Bachynsky (Physician)*, Vote and Order No. 11475;

n.      That on or about December 30, 1991, the Board of Medicine of the State of Florida revoked **NICHOLAS BACHYNSKY's** medical license in the State of Florida in the case of *Department of Professional Regulation vs. Nicholas Bachynsky, M.D.*; and

-10-

o.      That on or about June 18, 2002, Helvetia, **RICHARD A. ANDERS**, and Arthur Scheinert were privately sued by a Helvetia investor for, among other things, allegedly committing securities fraud in the case of *Jerome K. Chase, Sr., et al. v. Richard A. Anders, et al.*, Case No. 02-60848-CIV-SEITZ (S.D. Fla. June 18, 2002) and that, as a result, on or about June 25, 2002, the defendants and their accomplices used investors' funds to settle the lawsuit, paying $394,325.

## <u>OVERT ACTS</u>

In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one of the coconspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.      On or about February 13, 2001, Laurence M. Dean incorporated Helvetia in the State of Delaware.

2.      On or about February 27, 2001, Laurence M. Dean filed Helvetia's application to conduct business in the State of Florida as a foreign corporation.

3.      In or around February of 2001, **RICHARD A. ANDERS** solicited Investor S.K., in person, and induced S.K. to invest $25,000 in Helvetia.

4.      On or about March 14, 2001, Laurence M. Dean opened a corporate bank account in the name of Helvetia at First Union Bank.

5.      In or around March of 2001, **NICHOLAS BACHYNSKY** telephoned Investor A.S. and solicited A.S. to invest in Helvetia.

6.      In or around March or April of 2001, **NICHOLAS BACHYNSKY** telephoned Investor R.K. and solicited R.K. to invest in Helvetia.

-11-

7.      In or around July of 2001, **RICHARD A. ANDERS** solicited Investor M.H., in person, and induced M.H. to invest in Helvetia.

8.      In or around December of 2001, **RICHARD A. ANDERS, NICHOLAS BACHYNSKY,** and Laurence M. Dean entered into an agreement to purportedly assign future patent rights to Helvetia in exchange for, among other things, $250,000.

9.      On or about December 7, 2001, Laurence M. Dean signed check number 1209, drawn on Helvetia's First Union Bank Account Number 2000008260811 and made payable to "Dr. Nicholas Bachynsky" and another individual in the amount of $250,000, as a payment for the purported assignment of a patent.

10.     On or about January 15, 2002, **RICHARD A. ANDERS** executed the lease agreement for Helvetia's principal office located in Coral Springs, Florida.

11.     In or around February of 2002, **NICHOLAS BACHYNSKY** solicited Investor W.D., in person, provided W.D. with Helvetia's sales materials, and induced W.D. to invest in Helvetia.

12. In      or around March or April of 2002, **NICHOLAS BACHYNSKY** told Investor W.B., prior to investing in Helvetia, that the company's purported treatment was not based on DNP, but rather on an extract of a lichen.

13.     On or about April 9, 2002, **RICHARD A. ANDERS** caused Helvetia's written sales materials to be mailed to Investor B.L. via an overnight commercial carrier service.

14.     In or around May of 2002, **RICHARD A. ANDERS** solicited Investor S.K. to invest in Helvetia.

15.     On or about June 21, 2002, Laurence M. Dean opened a corporate bank account in the name of Helvetia at Bank of America.

16.     In or around July of 2002, **NICHOLAS BACHYNSKY** spoke to Investor N.N. in an attempt to induce her to invest in Helvetia.

17.     On or about October 4, 2002, Laurence M. Dean telephoned Investor G.H. concerning G.H.'s investment in Helvetia.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 2-8**
**Mail Fraud**
**(18 U.S.C. §§ 1341 and 2)**

1.     Paragraphs 1 through 6 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around late 2000, to in or around October 2002, in the Southern District of Florida, and elsewhere, the defendants,

**RICHARD A. ANDERS,**
**a/k/a "Rick," and**
**NICHOLAS BACHYNSKY,**
**a/k/a "Doc,"**
**a/k/a "Nick,"**

knowingly and with intent to defraud did devise and intend to devise a scheme and artifice to defraud and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and attempting to do so, did knowingly cause to be delivered certain mail matter by the United States Postal Service and a private and commercial interstate carrier, according to the directions thereon.

-13-

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      A purpose of the scheme and artifice was for the defendants and their accomplices to unjustly enrich themselves by misappropriating monies from investors for their personal use and benefit by making materially false representations and concealing and omitting to state material facts concerning, among other things, the use of investors' funds, Helvetia's ownership rights to a purported cancer treatment, investors' expected returns, the results of medical studies, the criminal and disciplinary histories of **RICHARD A. ANDERS** and **NICHOLAS BACHYNSKY,** and the health risks associated with Helvetia's purported cancer treatment.

## SCHEME AND ARTIFICE

4.      Paragraphs 4 through 14 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

## USE OF THE MAILS

5.      On or about the dates specified as to each count, the defendants, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did knowingly cause to be delivered by the United States Postal Service and a private and commercial interstate carrier, according to the directions thereon, the items identified below in each count:

-14-

| COUNT | APPROX. DATE | DESCRIPTION OF MAILING |
|-------|--------------|------------------------|
| 2 | February 26, 2001 | Helvetia subscription agreement and promissory note sent via Federal Express from the Southern District of Florida to Investor S.K. in San Antonio, Texas |
| 3 | March 2001 | Helvetia sales materials, including a subscription agreement, sent via Federal Express from the Southern District of Florida to Investor A.S. in Northwood, Iowa |
| 4 | November 27, 2001 | Helvetia subscription agreement and check # 0526, drawn against Investor R.A.'s account, sent via Federal Express by Investor R.A. in Monroe, Wisconsin to Helvetia in the Southern District of Florida |
| 5 | April 2002 | Helvetia sales materials, including a subscription agreement, sent via Federal Express from the Southern District of Florida to Investor B.L. in Boynton Beach, Florida |
| 6 | May 30, 2002 | Helvetia sales materials sent via Federal Express from the Southern District of Florida to Investor G.H. in Guilderland, New York |
| 7 | July 12, 2002 | Helvetia stock certificate # 157 mailed from the Southern District of Florida to Investor W.D. in Coral Springs, Florida |
| 8 | July 29, 2002 | Helvetia stock certificate # 145 mailed from the Southern District of Florida to Investor R.A. in Monroe, Wisconsin |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 9-13
### Wire Fraud
### (18 U.S.C. §§ 1343 and 2)

1.     Paragraphs 1 through 6 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

-15-

2.     From in or around late 2000, to in or around October 2002, in the Southern District of Florida, and elsewhere, the defendants,

**RICHARD A. ANDERS,**
**a/k/a "Rick," and**
**NICHOLAS BACHYNSKY,**
**a/k/a "Doc,"**
**a/k/a "Nick,"**

knowingly and with intent to defraud did devise and intend to devise a scheme and artifice to defraud and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.     A purpose of the scheme and artifice was for the defendants and their accomplices to unjustly enrich themselves by misappropriating monies from investors for their personal use and benefit by making materially false representations and concealing and omitting to state material facts concerning, among other things, the use of investors' funds, Helvetia's ownership rights to a purported cancer treatment, investors' expected returns, the results of medical studies, the criminal and disciplinary histories of **RICHARD A. ANDERS** and **NICHOLAS BACHYNSKY,** and the health risks associated with Helvetia's purported cancer treatment.

## SCHEME AND ARTIFICE

4.     Paragraphs 4 through 14 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

-16-

## USE OF THE WIRES

5.      On or about the dates specified as to each count below, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more specifically described below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 9 | April 11, 2001 | Wire transfer from Investor R.K.'s bank account in Minnesota, in the amount of $100,000, to Lonsdale's First Union Bank account #2090002896576 in the Southern District of Florida |
| 10 | October 22, 2001 | Wire transfer from Investor R.K.'s bank account in Minnesota, in the amount of $350,000, to Helvetia's First Union Bank account #2000008260811 in the Southern District of Florida |
| 11 | June 4, 2002 | Wire transfer from Investor S.K.'s bank account in New York, in the amount of $35,000, to Jufari's First Union Bank account #200000627225 in the Southern District of Florida |
| 12 | September 9, 2002 | Facsimile transmission enclosing documents sent by Laurence M. Dean in the Southern District of Florida to Investor S.K. in New York |
| 13 | October 4, 2002 | Telephone call between Laurence M. Dean in the Southern District of Florida and Investor G.H. in New York |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNTS 14-26</u>
**Securities Fraud**
**(15 U.S.C. §§ 78(b) and 78ff(a); 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2)**

1.      Paragraphs 1 through 6 of the General Allegations section and paragraphs 4 through 14 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates specified as to each count below, in the Southern District of Florida, and elsewhere, the defendants,

**RICHARD A. ANDERS,**
**a/k/a "Rick," and**
**NICHOLAS BACHYNSKY,**
**a/k/a "Doc,"**
**a/k/a "Nick,"**

did willfully, knowingly, and unlawfully, by the use of means and instrumentalities of interstate commerce, and the mails, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, that is, stock and notes issued by Helvetia, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of said securities, as listed below in each count:

| COUNT | APPROX. DATE | SECURITIES TRANSACTION |
|-------|--------------|------------------------|
| 14 | February 22, 2001 | Investor S.K. invested $25,000 in Helvetia and received a note promising to pay S.K. annual interest of 8% |
| 15 | March 15, 2001 | Sale to Investor A.S. of 10,000 shares of Helvetia stock for $10,000 |

-18-

| COUNT | APPROX. DATE | SECURITIES TRANSACTION |
|-------|-------------|------------------------|
| 16 | April 11, 2001 | Investor R.K. invested $100,000 in Helvetia and received a note promising to pay R.K. annual interest of 8% |
| 17 | July 19, 2001 | Sale to Investor M.H. of 300,000 shares of Helvetia stock for $300,000 |
| 18 | November 27, 2001 | Sale to Investor R.A. of 25,000 shares of Helvetia stock for $25,000 |
| 19 | February 23, 2002 | Sale to Investor W.D. of 10,000 shares of Helvetia stock for $10,000 |
| 20 | April 8, 2002 | Sale to Investor B.L. of 7,000 shares of Helvetia stock for $7,000 |
| 21 | April 30, 2002 | Sale to Investor A.S. of 5,000 shares of Helvetia stock for $5,000 |
| 22 | May 23, 2002 | Sale to Investor B.D. of 22,000 shares of Helvetia stock for $22,000 |
| 23 | June 3, 2002 | Sale to Investor G.H. of 5,000 shares of Helvetia stock for $5,000 |
| 24 | June 20, 2002 | Sale to Investor W.B. of 5,000 shares of Helvetia stock for $5,000 |
| 25 | June 25, 2002 | Investor R.A. invested $100,000 in Helvetia and received a note promising to pay R.A. annual interest of 10% |
| 26 | July 2, 2002 | Sale to Investor N.N. of 25,000 shares of Helvetia stock for $25,000 |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); and Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## COUNT 27
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.     Paragraphs 1 through 6 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

-19-

2.      From in or around late 2000, through in or around October 2002, in the Southern

District of Florida, and elsewhere, the defendants,

**RICHARD A. ANDERS,**
**a/k/a "Rick," and**
**NICHOLAS BACHYNSKY,**
**a/k/a "Doc,"**
**a/k/a "Nick,"**

did willfully, that is, with the specific intent to further the unlawful purpose, and knowingly

combine, conspire, confederate, and agree with each other and with others known and unknown to

the Grand Jury, to commit an offense under Title 18, United States Code, Section 1956, namely, to

knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign

commerce, which transactions involved the proceeds of specified unlawful activity, knowing that

the property involved in the financial transactions represented the proceeds of some form of unlawful

activity, and with the intent to promote the carrying on of such specified unlawful activity, in

violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

It is further alleged that the specified unlawful activity is mail fraud, wire fraud, and

securities fraud, punishable under the laws of the United States.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 28-37**
**Money Laundering**
**(18 U.S.C. §§ 1956(a)(1)(A)(i) and 2)**

1.      Paragraphs 1 through 6 of the General Allegations section of this Superseding

Indictment are re-alleged and incorporated fully herein by reference.

2.      On or about the dates specified as to each count below, in the Southern District of

Florida, and elsewhere, the defendants,

-20-

**RICHARD A. ANDERS,**
**a/k/a "Rick," and**
**NICHOLAS BACHYNSKY,**
**a/k/a "Doc,"**
**a/k/a "Nick,"**

dd knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign

commerce, which transactions involved the proceeds of specified unlawful activity, knowing that

the property involved in the financial transactions represented the proceeds of some form of unlawful

activity, with the intent to promote the carrying on of such specified unlawful activity:

| COUNT | APPROXIMATE DATE | FINANCIAL TRANSACTION |
|---|---|---|
| 28 | March 30, 2001 | Payment of $2,739.22 to Amera University 3200 Ltd for Helvetia office rent, by check number 1013 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 29 | April 24, 2001 | Payment of $626.89 to AT&T for Helvetia phone bill, by check number 1038 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 30 | June 27, 2001 | Payment of $785.66 to AT&T for Helvetia phone bill, by check number 1086 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 31 | October 30, 2001 | Payment of $2,739.22 to Amera University 3200 Ltd for Helvetia office rent, by check number 1163 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 32 | November 26, 2001 | Payment of $650.15 to AT&T for Helvetia phone bill, by check number 1186 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |

| COUNT | APPROXIMATE DATE | FINANCIAL TRANSACTION |
|---|---|---|
| 33 | April 1, 2002 | Payment of $3,464.06 to Tricony Coral Springs Ltd for Helvetia office rent, by check number 1349 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 34 | July 1, 2002 | Payment of $556.09 to AT&T for Helvetia phone bill, by check number 1488 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 35 | July 29, 2002 | Payment of $3,439.06 to Tricony Coral Springs Ltd for Helvetia office rent, by check number 1538 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 36 | August 28, 2002 | Payment of $3,439.06 to Tricony Coral Springs Ltd for Helvetia office rent, by check number 1579 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |
| 37 | October 7, 2002 | Payment of $857.51 to AT&T for Helvetia phone bill, by check number 1645 drawn on a Helvetia bank account maintained at First Union Bank in the Southern District of Florida |

It is further alleged that the specified unlawful activity is mail fraud, wire fraud, and securities fraud, punishable under the laws of the United States.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

A TRUE BILL

FOREPERSON

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

HUGO L. BLACK III
ASSISTANT UNITED STATES ATTORNEY

JEFFREY L. COX
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

vs.

Richard A. Anders and
Nicholas Bachynsky,

                        **Defendants.**
_____/

CASE NO.  _____04-20250-CR-Jordan(s)(s)_____

# CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| _X_ Miami | ____ Key West | |
| ____ FTL | ____ WPB | ____ FTP |

New Defendant(s)           Yes _____   No _X_
Number of New Defendants              _0_
Total number of counts                _37_

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:      (Yes or No)        _No_
List language and/or dialect

4.    This case will take    _25_  days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
(Check only one)                                    (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | _X_ | Felony | _X_ |
| V | 61 days and over | _____ | | |

6.    Has this case been previously filed in this District Court? (Yes or No)      _Yes_
If yes:
Judge: _____Jordan_____                Case No. _____04-20250-CR_____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?        (Yes or No)     _No_
If yes:
Magistrate Case No.                     _____
Related Miscellaneous numbers:          _____
Defendant(s) in federal custody as of   _____
Defendant(s) in state custody as of     _____
Rule 20 from the   _____   District of _____

Is this a potential death penalty case? (Yes or No)      _No_

7.    Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?  _X_ Yes     _____ No

8.    Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?  _____ Yes   _X_ No
If yes, was it pending in the Central Region?   _____ Yes     _____ No

9.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes   _X_ No

10.   Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?   _____ Yes   _X_ No

HUGO L. BLACK III
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0053074

*Penalty Sheet(s) attached                                REV.1/14/04

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:**   Richard A. Anders          **Case No:**   04-20250-CR-Jordan(s)(s)

Count #: 1

18 U.S.C. § 371

Conspiracy

**\*Max Penalty:**     5 years' imprisonment

Counts #: 2 - 8

18 U.S.C. § 1341

Mail Fraud

**\*Max Penalty:**     5 years' imprisonment

Counts #: 9 - 13

18 U.S.C. § 1343

Wire Fraud

**\*Max Penalty:**     5 years' imprisonment

Counts #: 14 - 26

15 U.S.C. §§ 78(b) and 78ff(a)
17 C.F.R. § 240.10b-5
18 U.S.C. § 2

Securities Fraud

**\*Max Penalty:**     10 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Richard A. Anders          **Case No:**   04-20250-CR-Jordan(s)(s)

Count #: 27

18 U.S.C. § 1956(h)

Conspiracy to Commit Money Laundering

**\*Max Penalty:**     20 years' imprisonment

Counts #: 28 - 37

18 U.S.C. § 1956(a)(1)(A)(i)

Money Laundering

**\*Max Penalty:**     20 years' imprisonment

Count #:

**\*Max Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**   Nicholas Bachynsky          **Case No:**  04-20250-CR-Jordan(s) (s)

Count #: 1

18 U.S.C. § 371

Conspiracy

**\*Max Penalty:**   5 years' imprisonment

Counts #: 2 - 8

18 U.S.C. § 1341

Mail Fraud

**\*Max Penalty:**   5 years' imprisonment

Counts #: 9 - 13

18 U.S.C. § 1343

Wire Fraud

**\*Max Penalty:**   5 years' imprisonment

Counts #: 14 - 26

15 U.S.C. §§ 78(b) and 78ff(a)
17 C.F.R. § 240.10b-5
18 U.S.C. § 2

Securities Fraud

**\*Max Penalty:**   10 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  Nicholas Bachynsky          **Case No:**  04-20250-CR-Jordan(s)(s)

Count #: 27

18 U.S.C. § 1956(h)

Conspiracy to Commit Money Laundering

**\*Max Penalty:**      20 years' imprisonment

Counts #: 28 - 37

18 U.S.C. § 1956(a)(1)(A)(i)

Money Laundering

**\*Max Penalty:**      20 years' imprisonment

Count #:

**\*Max Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

No. 04-20250-CR-JORDAN/KLEIN(SS)

# UNITED STATES DISTRICT COURT

____SOUTHERN____ District of ____FLORIDA____

## THE UNITED STATES OF AMERICA

vs.

____Richard A. Anders and____
____Nicholas Bachynsky,____
Defendants.

## INDICTMENT

In Violation of  18 U.S.C. § 371
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(h)
15 U.S.C. § 78j(b)
15 U.S.C. § 78ff(a)
17 C.F.R. § 240.10b-5
18 U.S.C. § 2

_A true bill._

_____
Foreperson

FGJ 04-805(MIA)

Filed in open court this _____ day,

of ____July____ A.D. 2005

_____
Deputy Clerk

Bail, $ _____

FORM OBD-34
March 04

# Grand Jury
Indictment No. 04-805-ECS-CCB4